**FORSTMANN v. ROGERS, formerly United States Collector of Internal Revenue.**

**No. 4433.**

District Court, D. New Jersey.

Nov. 25, 1940.

For former opinion, see 31 F.Supp. 660.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Thomas G. Haight, of Jersey City, N. J., Robert H. Montgomery and James O. Wynn, both of New York City, W. C. Magathan, of Washington, D. C., and George G. Blattmachr, of New York City, of counsel), for plaintiff.

William F. Smith, U. S. Atty., and Thorn Lord, Asst. U. S. Atty., both of Trenton, N. J., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Julian G. Gibbs, Sp. Assts. to the Atty. Gen., for defendant.

FAKE, District Judge.

After the filing of the opinion of the court herein on February 16th last, reported in 31 F.Supp. 660, and before the entry of judgment thereon, plaintiff sought a rehearing and certain cases were brought to the attention of the court which had not been cited in the briefs or considered at the trial. Among them, Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513, a case in point in this circuit, and therefore binding on this court. Its effect on the opinion heretofore filed must therefore be considered.

It will be noted that the issues at the trial centered about the meaning or judicial interpretation to be given to the word "cost", as it appears in Sec. 113, subdivision (a) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 380, and by the method of reasoning followed in the opinion, the conclusion was arrived at that the Series A debentures were the consideration passing in the exchange for the municipal and state bonds and that the cost of said bonds to the taxpayer as fixed in dollars by the stipulation, was in effect the cost to the taxpayer of the Series A debentures. It was urged at the trial and again now that such reasoning was faulty. A rehearing was allowed because of the aforesaid Hazeltine case.

It is interesting to note that the word "cost" was dealt with in this circuit at a very early date. Mr. Justice Bushrod Washington, sitting at Philadelphia in Goodwin v. United States, 10 Fed.Cas. pages 625, 626, No. 5,554, in 1811, was concerned with the word "cost" as distinguished from the words "market value", and even in this modern era one may feel in sympathy with him when he said: "After the closest examination of the point on which the controversy hangs, we can truly say, that our mind rather inclines to the opinion which we shall deliver, than that we feel a full confidence in its correctness." The learned justice was there dealing with a customs problem arising under the Revenue Act of 1799, 1 Stat. 677, and in that act the words "cost", "prime cost", "actual cost", and "actual and real cost", appear in different sections. He said: "The whole cause turns upon the legislative meaning of the word cost. The district attorney contends, that it is synonymous with value, or market price; and the importer, that it means the price they cost the individual at the place of exportation. The term is certainly of equivocal meaning, and is sometimes used to express the value of a thing, and sometimes the price paid for it. If possible we must endeavour to find out from the law itself, the meaning attached to the terms, by the legislature who passed it. The actual cost at the place of exportation, and the prime cost and all charges, are clearly used synonymously by the legislature * * *. What then constitutes the actual cost of an article at any particular place * * *? The answer is, the price given, and every charge which attended the purchase. * * * What is the meaning of the market price, or value of an article, at the place of exportation? The answer is, the price at which such articles are sold and purchased, clear of every charge but such as is laid upon it at the time of sale." Thus, it would appear that cost is the consideration price actually paid on transfer of title, while market price is the value to be placed upon an article dependent upon prevailing prices.

What then did Congress intend when it provided that gain or loss under the Revenue Act of 1928 should be determined on the "cost of such property?" Did it intend market value? If the reasoning of Mr. Justice Washington, as above cited, is followed, no other conclusion can be reached than that cost, and market value, are arrived at by quite different approaches, and

when Congress used the word "cost" it did so advisedly and in full knowledge of that difference, giving to it at this day, as then, the usual and commonly accepted connotation. The reasoning, then, in the February opinion of this court would not be in error, since there the word was given the meaning of price paid by the taxpayer.

In Alfonso v. United States, 1 Fed.Cas. pages 395, 398, No. 188, Mr. Justice Story laments the fact that as late as 1843 the Revenue Act of 1799 had not been revised, and that repugnances appear in the then existing amendments, and proceeds to say: "I adhere to the doctrine laid down in the cases cited at the bar, United States v. Sixteen Packages of Goods ([Fed.]Cas. No. 16,303), and Tappan v. United States ([Fed.Cas. No.] 13,749), that 'actual cost' in that section [66, Act of 1799] means the actual price paid for the goods by the party in the case of a real bona fide purchase, and not merely the market value of the goods. * * * The terms, however, are not identical in their meaning, nor is the one necessarily the true interpretation of the other." The foregoing excerpts from the early cases are cited only as illustrative of the reasoning applied at an earlier date and of the reasoning applied in the February opinion here.

In one of those early cases, it was pointed out that market price might be resorted to as evidential where the cost price was clouded by fraud, and so here if there was any question as to what was in the last analysis paid for the state and municipal bonds by the taxpayer, at the time she received delivery of them, market price would be available as a factor in ascertaining their cost to her. But as heretofore pointed out, she did not buy them for money, she got them by barter in exchange for the Series A debentures. This leads to the question as to whether this court can justify the next step which it took in resorting to the cost of the Series A debentures at their stipulated price to her when she received them, as being the cost to her of the state and municipal bonds. The answer is, that if the meaning of cost is given the narrow interpretation heretofore followed in this case and in the early cases, distinguishing it from market price, that approach was justified and the point reached is safe from successful attack.

The problem cannot, however, be thus quickly disposed of. It is urged, and properly so, that to follow the reasoning above indulged in leads to a direct conflict with the law as announced in the Hazeltine case, supra, thus confronting this court with the rule of stare decisis; while the facts as set out by Judge Maris in the Hazeltine case disclose that they, of course, differ widely from the facts in the instant case. It cannot be said that they are so unique as to limit the conclusions of law therein established to the sphere of those facts only. In the opinion [89 F.2d 518], the learned judge said: "The Board held that the cost of the property which was acquired for stock of the petitioner was the fair market value of the stock given in exchange for it, and we agree that this was the correct rule to apply."

It was stipulated by the parties here that "The fair market values of the Series A debenture bonds of Forstmann & Huffmann Company, a Delaware corporation, exchanged for the City of Buffalo bonds, maturing in the years 1929 and 1930, and the said State of Missouri bonds, maturing in the year 1930, at the time of the exchange in 1922 were respectively $147,138.46, $147,407.29, and $417,200.80." Applying, then, the rule last above announced at this circuit, it would appear that the above figures, being the market values, are the figures to be accepted, and not the cost figures to the taxpayer of the Series A debentures as heretofore erroneously found by this court.

Plaintiff further seeks a reversal of the reasoning and conclusion in the February opinion in so far as it relates to the effect of the repealer found in Section 1100 of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 140. Upon a further study of the original briefs and those furnished at the rehearing, nothing appears which is convincing that the court fell into error on that point. It therefore will remain as originally found. However, if a contrary conclusion were arrived at, it would not change the result here. The cost to the taxpayer of her Series A debentures would in either event be their market value at the time of the exchange and not the figure heretofore found by this court, since the cost is controlled by the rule in the Hazeltine case, supra.

Judgment will be entered for the plaintiff, in conformity herewith.